# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **06-00010-01-CR-W-ODS** |
| **Cecil W. Gotow,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## Report and Recommendation

Pending before the Court is *Defendant's Motion To Suppress Physical Evidence And Statements Obtained In Violation Of The Fourth And Fifth Amendments*, filed March 16, 2006 (Doc. #22-1). On May 10, 2006, the undersigned held an evidentiary hearing on the defendant's motion. Defendant Gotow was present and was represented by his counsel, John O'Connor. The government was represented by Assistant United States Attorney Amy Marcus. At the evidentiary hearing, the government called Officer Garron Carter, Major Philip Lawler and Sergeant Louis Perez of the Kansas City, Missouri Police Department as witnesses. No exhibits were admitted into evidence.

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

### PROPOSED FINDINGS OF FACT

1. On July 3, 2005, Officer Carter, Major Lawler and Sergeant Perez were working as off-duty security officers at Royals Stadium. (Tr. 4, 25, 29).

2. At approximately 9:00 p.m. Officer Carter received information from the radio dispatcher within Royals Stadium that a 1990, gray and white, Chevrolet van with a handicap license plate F822 had nearly run over a Royals' employee. (Tr. 5) Immediately after receiving the transmission, Officer Carter saw the vehicle at the intersection of Royals Way and Lot M of the Stadium parking lot. (Tr. 5)

3. Officer Carter was dressed in full uniform and was driving a 15-passenger white Ford van that had no markings or lights. (Tr. 6)

4. Officer Carter caught up with the van at Stadium Drive and 40 Highway where he pulled alongside the passenger side of the vehicle and made a motion for the passenger to roll his window down. The passenger did so. (Tr. 6)

5. Officer Carter informed the driver (later identified as Defendant Gotow) that a Royals employee had made an allegation that Gotow had attempted to run over him. (Tr. 6) Officer Carter asked Gotow to return to Gate 1 in the stadium in order to resolve the matter. Gotow indicated that he did not attempt to run over anyone but he would return to Gate 1 in the stadium (Tr. 7) Officer Carter followed Gotow to Gate 1. (Tr. 8-9)

6. Officer Carter did not exit his vehicle, display a weapon, speak in a threatening tone, or order Gotow to return to the stadium (Tr. 8)

7. After Gotow and Officer Carter arrived at Gate 1, Officer Carter spoke with the Royals employee who identified Gotow, the passenger and the vehicle as having tried to run over him moments earlier. (Tr. 9)

8. After the employee identified the vehicle, Officer Carter approached Gotow and asked him for identification and to step from the vehicle. Gotow did not have any identification but verbally supplied his information to Officer Carter. (Tr. 10)

9. Officer Carter asked Gotow if he had any illegal drugs or weapons on him. Gotow replied that he did not. Officer Carter asked to pat him down and Gotow agreed. (Tr. 10, 17-18)

10. Officer Carter conducted the pat down for officer safety reasons. (Tr. 18)

11. During the pat down, Officer Carter felt in Gotow's left pocket

what he believed from his training and experience to be baggies containing narcotics. Officer Carter removed the items from Gotow's pockets. Officer Carter then handcuffed and detained Gotow while a field test was conducted on the items. (Tr. 11, 20-21) One bag field tested positive for marijuana and the other for cocaine. (Tr. 11, 20)

12. When Officer Carter recovered the items from Gotow's person, Gotow stated, "I would not have given you permission to search me if I remembered that had been in my pocket." (Tr. 11)

13. Sergeant Perez, Major Lawler and another officer had arrived at the scene and were present when Gotow made the above statement. (Tr. 12, 26, 28, 30)

## PROPOSED CONCLUSIONS OF LAW

In support of his motion to suppress his statements and the illegal narcotics, defendant Gotow contends that

1. Officer Carter did not have a valid legal reason to stop defendant Gotow;

2. that Officer Carter exceeded any permissible scope to detain defendant Gotow; and

3. Officer Carter illegally searched defendant Gotow in derogation of the Fourth Amendment's protections against unreasonable searches and seizures.

The Court does not agree and addresses each of defendant Gotow's contentions in turn.

### 1. Initial Stop

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[1] papers, and effects, against unreasonable searches and seizures, shall not be

---

[1] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

Automobile travel is a basic, pervasive, and often necessary mode

violated. . . ." U.S. CONST. amend. IV.  As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures.  *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960).  Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

      In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant.  However, over the years, many exceptions to the warrant requirement have been recognized.  For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest.  *Id*.

---

> of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks.  Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

at 30.  However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27.  Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop."  *INS v. Delgado*, 466 U.S. 210, 217 (1984).

      The rights protected by the Fourth Amendment are arguably implicated[2] in this case by Officer Carter's decision to stop the automobile being driven by Gotow and thereafter to detain Gotow.  *Delaware v. Prouse*, *supra*, 440 U.S. at 653.  However, it well-settled that "[a]n investigation stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity."  *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999).  In this case, the Court finds that Officer Carter had the

---

[2] While the Court does address the validity of Officer Carter's actions in this case in terms of the requirements of the Fourth Amendment, the evidence before the Court is that the entire encounter was, in fact, consensual and thus outside Fourth Amendment proscriptions.  The evidence adduced at the evidentiary hearing indicates that Officer Carter was in a large unmarked passenger van when he drove up along the right side of defendant Gotow's vehicle and motioned for the Gotow's passenger to roll down the window.  Officer Carter then informed Gotow of the allegations of the Royals employee and asked if Gotow if he would voluntarily return to the stadium.  It has been established that "law enforcement officers do not violate the fourth amendment by merely approaching an individual on the street or in another public place and asking him if he is willing to answer some questions [and] by putting questions to him."  *Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Campbell*, 843 F.2d. 1089, 1092 (8th Cir. 1988).  No objective justification is required for such an encounter because no constitutional interest is implicated.  *United States v. Campbell*, 843 F.2d at 1092; *United States v. Nunley*, 873 F.2d 182, 184 (8th Cir. 1989).

      Gotow consented to return to Gate 1 in the stadium and then subsequently consented to the pat down of his person which revealed the illegal narcotics and resulted in his arrest.  Where a defendant voluntarily consents to a search of his person, with no threat or coercion, the consensual search does not violate the Fourth Amendment.  *United States v. Martinez*, 168 F.3d 1042, 1046 (8th Cir. 1999).  There is no evidence before the Court of circumstances indicating threat or coercion by Officer Carter.  Thus, the encounter between defendant Gotow and Officer Carter appears to the Court to have been consensual from beginning to end.  However, as the body of this Report and Recommendation indicates, Officer Carter's actions were well within the parameters of the Fourth Amendment even assuming the encounter was not entirely consensual.

requisite reasonable suspicion to stop the vehicle that was traveling on stadium grounds and exactly matched the precise description (including license plate number) given by a Royals employee who had indicated the driver of the vehicle had attempted to run over him only moments earlier.

## 2. Scope of Detention

However, even though an officer may have justification to initiate a traffic stop, the ensuing detention of a vehicle's occupants "must not be excessively intrusive in that the officer's actions must be reasonably related in scope to the circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Nonetheless, any justifiable traffic stop "may include asking for the driver's license and registration, asking the driver to sit in the patrol car, and asking about the driver's destination and purpose." *United States v. Alegree*, 175 F.3d 648, 650 (8th Cir. 1999). Furthermore, Officer Carter was justified in asking defendant Gotow to step out of the vehicle to be questioned.

> [O]nce a motor vehicle has been lawfully detained . . . the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

*Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). Moreover, for reasons of officer safety among other justifications, Officer Carter was entitled to conduct a pat-down search of defendant Gotow. *United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004)

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** *Defendant's Motion To Suppress Physical Evidence And Statements Obtained In Violation Of The Fourth And Fifth Amendments*, filed March 16, 2006 (Doc. #22-1).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                                  */s/John T. Maughmer*
                                                               **John T. Maughmer**
                                            **United States Magistrate Judge**